[No. 23649-4-II. Division Two. September 8, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS J. REID, *Appellant*.

*John L. Cross* (of *Ronald D. Ness & Associates*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

ARMSTRONG, C.J. — Thomas James Reid was committed to Western State Hospital after he was acquitted of first degree murder by reason of insanity. Four years after his commitment, he petitioned for final discharge. The trial court found that Reid was not currently suffering from a mental disease or defect. However, the court also found that, if Reid became overly stressed and again used drugs, he would likely experience another psychotic episode. Because of this, the court granted conditional release rather than final discharge. Reid appeals, arguing that under the Due Process Clause he is entitled to final discharge unless he is both mentally ill and dangerous. We hold that Reid's conditional release does not violate due process. We affirm.

## FACTS

In 1994, Thomas Reid shot his roommate, Aaron Hughes. Reid pleaded not guilty by reason of insanity. At a hearing on Reid's motion for acquittal, the trial court found (1) that he "suffered from an underlying mental disease or defect of major depression and/or some other undiagnosed disease or defect"; (2) that his use of hallucinogenic drugs, possibly LSD, triggered a psychotic disorder that caused him to be legally insane at the time the crime was committed; and (3) that his "psychotic condition is of a permanent condition triggered by the use of drugs and presents a long term condition to which he was predisposed before use of the drugs." The court acquitted Reid by reason of insanity and committed him to Western State Hospital.

In 1998, Reid filed a motion for final discharge under RCW 10.77.200.[1] The treatment team at Western State had previously declined to recommend his discharge. In response to Reid's motion, the Chief Executive Officer at Western State sent a report to the court recommending Reid's conditional release. The report said that "[s]ince admission Mr. Reid has shown no evidence of psychosis, even without antipsychotic medication, and has participated actively in the inpatient program." The report concluded that conditional release was the best option, with monitoring through the Legal Offender Unit's Community Program. But the report recommended that Reid be required to reside at Western State Hospital "[s]ince Mr. Reid has no track record of independent functioning in the community" and that monitoring by the Department of Corrections was not appropriate "[g]iven the seriousness of his crime." At the time of the report, Reid was 22 years old.

Two doctors testified at a hearing on Reid's motion for final discharge. Both agreed that Reid was not presently suffering from a psychotic disorder, and both recommended conditional discharge. Dr. Harris, who had also evaluated Reid in 1994, found no evidence of major depression. When asked whether Reid no longer presents, as a result of mental disease or defect, a substantial danger to society, Dr. Harris said:

> I think Mr. Reid fits that criteria, and by "that criteria," I'm saying I don't think Mr. Reid is any more dangerous than any other member of the general population. I also ask, in the case of Mr. Reid, that this also—this opinion is dependent upon his

---

[1] Apparently, Reid petitioned directly to the court under former RCW 10.77.200(3) (1998), which then provided:

Nothing contained in this chapter shall prohibit the patient from petitioning the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner, as a result of a mental disease or defect, is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

The Legislature recently amended this statute by substituting "release" for "final discharge." LAWS OF 2000, ch. 94, § 16. This opinion will use the terminology in effect when Reid filed his petition.

continuing to be sober and straight, in terms of alcohol and drug use.

Dr. Harris said that he may have a "fragility" to hallucinogenic drugs and that if he "uses hallucinogenic drugs or other drugs, he's putting himself in grave risk and the community in grave risk." Dr. Harris repeatedly said that fragility cannot be characterized as a mental disease or defect.

Dr. Trowbridge testified that Reid is "not actively psychotic," but said that does not mean Reid "doesn't have the underlying disease or defect that triggered [a psychotic reaction] back in 1994." He was concerned that, if Reid were exposed to the same issues that he was dealing with in 1994, he might experience delusional thoughts again. These issues included growing up, being away from home, separation, making friends, and making up his own identity in the world.

Dr. Trowbridge believed that Reid has a "fragile psyche" that put him over the edge when he took hallucinogenic drugs. Dr. Trowbridge characterized this "fragility" as a mental defect because he diagnosed Reid with major depression. He agreed that "fragile psyche" is not included in the Diagnostic and Statistical Manual and is not a psychologically recognized disorder or defect. He characterized it as a legal concept. When questioned about his diagnosis of major depression, Dr. Trowbridge could only show that Reid had two symptoms of major depression. He agreed that the other symptoms are "debatable" and that a diagnosis requires five or more symptoms out of a list of nine.

The trial court denied the motion for final discharge and ordered conditional release. The court concluded that "Reid is not currently suffering from a mental disease or defect but, if he were to use drugs or become overly stressed by his environment, it is more likely than not that he would decompensate and experience a psychotic episode." The court stated further:

There are clear and convincing reasons that Mr. Reid should

have his right to be free from physical restraint conditioned. All expert witnesses agreed that if Mr. Reid were to use drugs again that it is more likely than not that this would trigger another psychotic episode and he would then be suffering a mental disease or defect. Mr. Reid has lived in a very controlled environment and concerns expressed by Dr. Trowbridge and Western State Hospital are that Mr. Reid has not had to independently deal with the personal issues that contributed to his psychotic disorder. These two factors, either independently or jointly, could result in psychotic symptoms. Until Mr. Reid can demonstrate that he is able to function independently under the conditions recommended by Western State Hospital, he still presents a substantial danger to other persons or a substantial likelihood of committing felonious acts due to his prior mental disease or defect.

The order of conditional release requires Reid to reside at Western State Hospital. The Community Program staff determines the specific residence or ward within the Legal Offender Unit, the length of stay, and the privileges granted. Reid may move in the future to a community residence or community supervised facility, subject to the approval of the Community Program staff. The staff is required to submit a report to the court every six months if there is a substantial change in the treatment plan or Reid's condition.

## ANALYSIS

Reid argues that, because the trial court concluded that he is "not currently suffering from a mental disease or defect," he must be granted final discharge, as opposed to conditional release. He contends that this is required under the United States Supreme Court's holding in *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). The State argues that the denial of final discharge was proper, but assigns error to the trial court's conclusion that Reid is not currently suffering from mental disease or defect.

### A. *Foucha v. Louisiana*

In *Foucha,* the Supreme Court rejected the argument

that Louisiana could continue to detain an insanity acquittee who is no longer mentally ill until that person could demonstrate that he was no longer dangerous. *Id.* at 73. Terry Foucha was acquitted of burglary and illegal discharge of a firearm by reason of insanity and was committed to a psychiatric facility. *Foucha*, 504 U.S. at 73-74. Four years later, the superintendent recommended a conditional discharge because Foucha no longer had signs of mental illness. *Foucha*, 504 U.S. at 74 & n.2.

Two doctors commissioned by the trial court concluded that Foucha's mental illness was in remission, but neither could certify that he was not a "menace" to himself or others. One of the doctors concluded that he had suffered from drug-induced psychosis and currently had no signs of psychosis. He did suffer from "antisocial personality," which is not a mental disease and is untreatable. *Foucha*, 504 U.S. at 75. The trial court denied the petition for conditional release. The Louisiana Supreme Court affirmed because Foucha had not met his burden of proving that he was no longer dangerous to himself or others. *Foucha*, 504 U.S. at 75.

In a 5-4 decision, the United States Supreme Court reversed, holding that Foucha's continued detention based on dangerousness and antisocial personality disorder violated his due process rights.[2] *Foucha*, 504 U.S. at 75-83. The Court gave three reasons for its decision. First, "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha*, 504 U.S. at 79 (citing *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)). Thus, "keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and dangerousness." *Foucha*, 504 U.S. at 78.

---

[2] A three-member plurality also held that the Louisiana statute discriminates against insanity acquittees in violation of the Equal Protection Clause. *Foucha*, 504 U.S. at 84-85.

Next, the Court noted that if Foucha were held, it should not be as a mentally ill person because he was not currently suffering from a mental disease or illness. Therefore, the second problem with Foucha's detention was that, because he could "no longer be held as an insanity acquittee in a mental hospital, he [was] entitled to constitutionally adequate procedures to establish the grounds for his confinement." *Id.* at 79 (citing *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858, 32 L. Ed. 2d 435 (1972)).

Third, a person has a fundamental liberty interest in being free from bodily restraint, and "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* at 80 (citing *Jones*, 463 U.S. at 361). The Court cited three examples of constitutional detention or commitment: (1) confinement of convicted criminals for purposes of retribution and punishment; (2) commitment of the mentally ill based on clear and convincing evidence of mental illness and dangerousness; and (3) pretrial detention based on a legitimate and compelling interest in preventing crime by the arrestees. *Foucha*, 504 U.S. at 80-81.

The Court contrasted Louisiana's commitment scheme, "which permits the indefinite detention of insanity acquittees who are not mentally ill," with the "narrowly focused" pretrial detention scheme under the Bail Reform Act of 1984. *Id.* at 81, 83. The Bail Reform Act had survived constitutional scrutiny because the government had a legitimate and compelling interest in preventing crime by arrestees and the statute was narrowly focused. *Id.* at 81 (citing *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). Pretrial detainees under the Bail Reform Act are given a "full blown" adversarial hearing at which the standard of proof for establishing dangerousness is by clear and convincing evidence. *Id.* at 81 (citing *Salerno*, 481 U.S. at 751.) In addition, the duration of confinement is strictly limited and pretrial detainees are generally not housed with convicted criminals. *Id.*

The Court distinguished Louisiana's detention scheme

because it allowed the indefinite confinement of a person who is not mentally ill until that person could prove by a preponderance of the evidence that he was not dangerous. No adversarial hearing was held to prove, by clear and convincing evidence, that Foucha was dangerous. The Court noted that no doctor in Foucha's case had testified positively that he would be dangerous. Instead, the doctors simply refused to certify that he would not be dangerous based on past incidents of assault and his antisocial personality. *Foucha*, 504 U.S. at 82. Because Louisiana's scheme was not narrowly focused, the Court reversed the judgment. *Id.* at 83, 86.

B. Statutory Scheme

RCW 10.77.200 sets out the procedure for final discharge of a patient who is subject to mental heath treatment following an acquittal by reason of insanity.[3] A committed or conditionally released person may apply to the secretary of the Department of Social and Health Services for final discharge. If the secretary approves final discharge, the person may petition the court. RCW 10.77.200(1). A hearing is then held at which the petitioner must:

> [S]how by a preponderance of the evidence that [he] no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

RCW 10.77.200(2).

Under a separate statutory section, a person may apply to the secretary for conditional release. RCW 10.77.150(1).[4] The application, the secretary's recommendations, and any

---

[3] As stated in note 1, *supra*, this statute has been amended to substitute "release" for "final discharge." Laws of 2000, ch. 94, § 16. The Legislature defined "release" as the "legal termination of the court ordered commitment under the provisions of [ch. 10.77]." Laws of 2000, ch. 94, § 12.

[4] The Legislature recently defined conditional release as the "modification of a court-ordered commitment, which may be revoked upon violation of any of its terms." Laws of 2000, ch. 94, § 12.

proposed terms and conditions of release are then forwarded to the court. *Id.* The court must hold a hearing to determine "whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.150(2). If the court disapproves of the secretary's recommendation for conditional release, the trial court's decision must be supported by substantial evidence. *Id.* Division Three has held that to deny conditional release the trial court must find that the petitioner is dangerous or presents a substantial likelihood of committing criminal acts *as a result of mental disease or defect. State v. Sommerville*, 86 Wn. App. 700, 707-08, 937 P.2d 1317 (1997).[5] Reid petitioned directly to the court for final discharge under former RCW 10.77-.200(3) (1998). (*See supra* note 1.) Section (3) provides:

> Nothing contained in this chapter shall prohibit the patient from petitioning the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner, as a result of a mental disease or defect, is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

C. Analysis

Reid does not challenge the statutory procedures for conditional release but simply argues that he is entitled to final discharge under *Foucha* and RCW 10.77.200. His argument is not supported by either.

 Reid argues that, if he establishes that he is no longer mentally ill, then he must be granted final discharge. But the language of RCW 10.77.200(3) suggests that the Legislature views final discharge and conditional release as

---

[5] The court reached this conclusion by harmonizing the standards for conditional release and the standards for final discharge under RCW 10.77.150 and RCW 10.77.200. The court concluded that RCW 10.77.200(3) resolves the conflict and shows that the standards are the same. *Sommerville*, 86 Wn. App. at 707-08.

two alternative forms of release. Legislation must be read to give effect to every word and not to render any language superfluous or absurd. *City of Seattle v. Williams*, 128 Wn.2d 341, 349, 908 P.2d 359 (1995); *In re Personal Restraint of Robles*, 63 Wn. App. 208, 216, 817 P.2d 419 (1991). Here, the Legislature referred to conditional release in a statute concerning final discharge. According to Reid, a finding that he is no longer mentally ill necessarily results in final discharge. If that were the case, there would never be circumstances resulting in conditional release. Rather, an inmate found mentally ill and dangerous would be denied any release, and an inmate found not mentally ill would be entitled to final discharge. This result would read "conditional release" out of the statute. To give meaning to "conditional release," we conclude that the Legislature intended to allow conditional release where the evidence shows the potential for substantial danger without a gradual release into the community, even though the petitioner does not currently suffer from mental disease or defect.

As explained, the issue to be determined under either a petition for final discharge or conditional release is the same. *See* RCW 10.77.200(3); *Sommerville*, 86 Wn. App. at 708. Thus, a petitioner who proves that he is no longer dangerous as a result of continuing mental disease or defect must be either discharged or conditionally released.[6]*See* RCW 10.77.200(3); *see also Sommerville*, 86 Wn. App. at 708. Given the uncertainty in "knowledge and therapy regarding mental disease . . . courts should pay particular deference to reasonable legislative judgments about the relationship between dangerous behavior and mental illness." *Foucha*, 504 U.S. at 87 (O'Connor, J., concurring) (quoting *Jones*, 463 U.S. at 365 n.13) (internal quotation marks omitted).

---

[6] Reid relies on the *Sommerville* case to support his contention that he must be discharged. We read *Sommerville*, however, as support for the order of conditional release in this case. There, Division Three ordered conditional release because the State failed to produce substantial evidence of continuing mental illness in addition to evidence of the petitioner's dangerousness. *Sommerville*, 86 Wn. App. at 706, 711. The court did not state that final discharge was the only option where there was insufficient evidence of mental disease or defect.

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha*, 504 U.S. at 79. In her concurring opinion in *Foucha*, Justice O'Connor said:

> I do not understand the Court to hold that Louisiana may never confine dangerous insanity acquittees after they regain mental health. . . . It might . . . be permissible . . . to confine an insanity acquittee who has regained sanity if, unlike the situation in this case, the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness.

*Id.* at 87-88 (O'Connor, J., concurring).[7]

The concern in *Foucha* was "indefinite detention," not conditional release. Conditional release is not indefinite detention but a means of easing the patient back into the community. Conditional release may entail full release into the community subject to necessary conditions or may "contemplate partial release for work, training, or educational purposes." RCW 10.77.150(1). The statute mandates that, when a person is conditionally released, the court must review the case no later than one year after such release. RCW 10.77.180.

Here, the conditional release bears a reasonable relationship to the purpose for which Reid was committed. Reid was committed for treatment because he was both dangerous and mentally ill at the time he murdered his roommate. *See* RCW 10.77.110. Although presently he does not show signs of mental illness, all experts agreed that if he takes drugs he would more likely than not become psychotic and present a grave danger to himself and society. One expert felt that he could be dangerous if exposed to stress from his

---

[7] Justice O'Connor then observed that it would not be permissible to treat all acquittees alike, without regard for their particular crime. "[T]he strong interest in liberty of a person acquitted by reason of insanity but later found sane might well outweigh the governmental interest in detention where the only evidence of dangerousness is that the acquittee committed a nonviolent or relatively minor crime." *Foucha*, 504 U.S. at 88 (O'Connor, J., concurring).

living environment and the difficulties of establishing his identity in the world. Reid has no history of successful independent living in the community. Under the terms of his conditional release the treatment goal is "to gradually work his way into the community, living eventually away from the hospital and working independently." And, Reid's progress will be monitored with biannual reports to the court and a mandatory review no later than one year after his conditional release. RCW 10.77.180. The trial court concluded that "clear and convincing evidence" established that Reid's right to be free from physical restraint should be conditioned. Because the terms of his conditional release bear a reasonable relationship to the purpose of his confinement, the trial court did not err in denying his petition for final discharge.[8]

Affirmed.

SEINFELD and HUNT, JJ., concur.

Review granted at 142 Wn.2d 1024 (2001).

---

[8] The California Court of Appeals has upheld mandatory outpatient treatment for one year before an insanity acquittee who is no longer mentally ill can be unconditionally released. *People v. Beck*, 47 Cal. App. 4th 1676, 55 Cal. Rptr. 2d 340 (1996).