30 P.3d 465 (2001)
144 Wash.2d 621
STATE of Washington, Respondent,
v.
Thomas REID, Petitioner.
No. 70290-0.
Supreme Court of Washington, En Banc.
Argued June 14, 2001.
Decided September 6, 2001.
Ronald D. Ness & Associates, John L. Cross, Port Orchard, for Petitioner.
Russell Hauge, Kitsap County Prosecutor, Randall Avery Sutton, Deputy, Port Orchard, for Respondent.
SANDERS, J.
The question is whether an insanity acquittee must be unconditionally released from confinement in a mental institution if he establishes he no longer suffers from a mental disease or defect. We conclude our statute requires no less, reverse the Court of Appeals, and order Mr. Reid's unconditional release.

*466 FACTS
Thomas Reid voluntarily ingested hallucinogenic drugs during April and June of 1994. Two months later Reid suffered a psychotic episode during which he shot and killed his roommate Aaron Hughes. Reid was charged with first degree murder and entered a plea of not guilty by reason of insanity.
Reid was examined by Dr. Carl Redick of Western State Hospital and Dr. Christian Harris of Seattle. Both men testified on his behalf at the insanity hearing. The state presented no witnesses to contradict the testimony offered by doctors Redick and Harris. Dr. Harris opined Reid had a "psychotic disorder that was induced by substance abuse of a hallucinogen, and that the type of psychotic disorder that he had was a paranoid one." Report of Proceedings (RP) at 5. He further concluded this paranoia prevented Reid from understanding the nature or wrongfulness of his acts when he shot his roommate.
Considering the testimony of Dr. Redick and Dr. Harris the trial court found:
The defense of insanity has been established by a preponderance of the evidence. The evidence has established that the Defendant, Thomas Reid, suffered from an underlying mental disease or defect of major depression and/or some other undiagnosed disease or defect. That his voluntary use of hallucinogenic drugs in April, 1994 and June, 1994, triggered a psychotic disorder that caused him to be legally insane at the time of the commission of the offence....
Clerk's Papers (CP) at 7-8. Based on this determination the court found Reid not guilty by reason of insanity. The court further found Reid presented both a substantial danger to others and a substantial likelihood of committing felonious acts jeopardizing public safety and security and so committed him, indefinitely, to Western State Hospital pursuant to RCW 10.77.110.
Reid spent the next three years confined to an inpatient treatment ward for the criminally insane. He was "alert, oriented and cooperative" when he arrived at the hospital. CP at 14. Throughout the course of his confinement Reid was consistently stable and presented no psychotic symptoms. He attended both group and individual therapy and developed stronger skills for handling his interpersonal relationships. He completed the legal offender unit's (LOU) dual diagnosis treatment module and the follow-up recovery group. He also participated in LOU's symptom management training and developed a relapse prevention plan. He also completed his high school education.
Reid filed a Motion for Order of Final Discharge[1] pursuant to former RCW 10.77.200 (1993) in Kitsap County Superior Court on March 31, 1998. Western State Hospital filed a report concerning Reid's possible release acknowledging "since admission Mr. Reid has shown no evidence of psychosis, even without antipsychotic medication, and has participated actively in the inpatient program." CP at 17. Further the report stated, "It is the opinion of the senior staff committee that Mr. Reid has received the maximum benefit that he is capable of receiving in the inpatient phase of treatment at the Legal Offender Unit." Id. Nevertheless the hospital declined to recommend a final discharge, opting instead to recommend conditional release.
Dr. Christian Harris again evaluated Reid and testified concerning his mental condition. Dr. Harris concluded Reid was "unimpaired by a mental disorder at the present time." RP at 9. Moreover the doctor testified Reid's ability to use insight and judgment had undergone a "100 percent reversal" since his initial commitment. RP at 10. While Dr. Harris conceded Reid had a "fragility" which made him particularly vulnerable to hallucinogenic drugs, he repeatedly asserted such "fragility" did not amount to a mental defect. Rather he emphasized Mr. Reid "does not have a mental disease or defect at the present time." RP at 18. And he concluded, "I don't think Mr. Reid is any more dangerous than any other member of the general population." RP at 12. Notwithstanding, Dr.
*467 Harris recommended Reid be conditionally released rather than finally discharged.
Reid was also examined by Brett Trowbridge who is both a member of the Washington State Bar and Ph.D. in psychology. Dr. Trowbridge also recommended conditional release. However he disagreed with Dr. Harris's conclusion that Reid did not suffer from a current mental disease or defect. Dr. Trowbridge diagnosed Reid with major depression. But on cross examination Trowbridge was forced to concede Mr. Reid did not exhibit the symptoms necessary to justify such a diagnosis. Moreover Dr. Trowbridge admitted Reid was not presently psychotic. Additionally Trowbridge conceded Reid did not suffer a single psychotic episode since his arrival at Western State Hospital despite the fact that during the course of his commitment he was "housed with some very regressed and psychotic patients." CP at 22.
Reid's counsel argued the evidence presented by Dr. Harris, Dr. Trowbridge, and Western State Hospital all established Reid no longer suffered from a mental disease or defect, and thus he was entitled to a final discharge pursuant to the United States Supreme Court decision in Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
The Kitsap County Superior Court conditionally released Reid rather than finally discharging him on July 28, 1998. The court's memorandum opinion states in part:
The testimony presented by Dr. Harris concludes that Mr. Reid is not suffering from a mental disease or defect at this time. Dr. Harris recommends a conditional release. Dr. Trowbridge, while first finding an Axis I diagnosis of major depression, could not substantiate that finding in his testimony. He recommended a conditional release. Western State has given an Axis I diagnosis that is essentially his presenting diagnosis. They are recommending a conditional release. The Court concludes, based on the testimony and evidence, that Mr. Reid is not currently suffering from a mental disease or defect but, if he were to use drugs or become overly stressed in his environment, it is more likely than not that he would decompensate and experience a psychotic episode. He, therefore, continues to present a substantial danger to other persons or a substantial likelihood of committing felonious acts. Showing that he is not currently suffering a mental disease or defect is not sufficient alone to meet the statutory requirements based on a plain reading of the statute and the Court's opinion in the Foucha case.
CP at 27.
The order of conditional release required, inter alia, Reid to continue to reside at Western State Hospital. The length of his stay at the hospital and the privileges to which he was entitled were matters left within the discretion of the treatment staff. The order further prohibited Reid from driving a car without permission of the staff, subjected him to random drug and alcohol testing, and required him to seek permission from the staff for all off-campus activities.
Reid filed a timely notice of appeal on August 13, 1998. Division Two of the Court of Appeals, in a published opinion, rejected Reid's argument that he was entitled to a final release based on its reading of the commitment statute and Foucha, and affirmed. State v. Reid, 102 Wash.App. 508, 7 P.3d 872 (2000). Thereafter Reid sought and obtained review here.

ANALYSIS
The Washington State Legislature has seen fit to provide criminal defendants with a mechanism for obtaining an acquittal by reason of insanity. See ch. 10.77 RCW. The would-be insanity acquittee has "the burden of proving by a preponderance of the evidence that he or she was insane at the time of the offense or offenses with which he or she is charged." RCW 10.77.080. If the defendant carries this burden, an acquittal may be entered and the defendant thus "escapes"[2] criminal punishment.
*468 The statute further provides for the civil commitment of insanity acquittees who present a substantial danger to others or a substantial likelihood of committing future criminal acts which would jeopardize public safety. RCW 10.77.110. While the acquittee is presumed to continue to labor under a mental defect, State v. Platt, 143 Wash.2d 242, 251, 19 P.3d 412 (2001),[3] there is no such presumption with respect to whether the acquittee continues to be dangerous at the time of acquittal. That determination is left to the trier of fact. RCW 10.77.040, .080. Thus the laws of the State of Washington provide greater protection to insanity acquittees than is necessarily required under the Federal Constitution where prevailing on a not-guilty-by-reason-of-insanity plea may constitute, ipso facto, adequate grounds for commitment. Foucha, 504 U.S. at 76, 112 S.Ct. 1780.
An insanity acquittee committed pursuant to RCW 10.77.110 may apply to the Secretary of the Department of Social and Health Services for final discharge or conditional release. RCW 10.77.150(1), .200(1). The secretary then determines whether reasonable grounds exist to grant the request. RCW 10.77.200(1). If the secretary approves the application the acquittee is authorized to submit a petition to the court. Id.
RCW 10.77.150(2) which relates to conditional release states:
The court of the county which ordered the person's commitment, upon receipt of an application for conditional release with the secretary's recommendation for conditional release, shall within thirty days schedule a hearing. The court may schedule a hearing on applications recommended for disapproval by the secretary.... The issue to be determined at such hearing is whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security. ...
(Emphasis added.) By contrast, RCW 10.77.200(2), which relates to final discharge, provides:
The petition shall be served upon the court and the prosecuting attorney. The court, upon receipt of the petition for release, shall within forty-five days order a hearing.... The burden of proof shall be upon the petitioner to show by a preponderance of the evidence that the petitioner no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.
(Emphasis added.) Under these statutes the criteria for final discharge is different from the burden for conditional release in the sense that one who is mentally ill may nevertheless be conditionally released if his dangerousness can be adequately controlled by appropriate conditions.
However an insanity acquittee is not required to first apply to the secretary for final discharge or conditional release. He may, as Mr. Reid did, petition the court directly pursuant to 10.77.200(3):
Nothing contained in this chapter shall prohibit the patient from petitioning the court for release or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner, as a result of a mental disease or defect, is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions....
*469 The Court of Appeals correctly reasoned, "the language of RCW 10.77.200(3) suggests that the Legislature views final discharge and conditional release as two alternative forms of release." Reid, 102 Wash.App. at 516-17, 7 P.3d 872. However the Court of Appeals concluded the burden on an insanity acquittee who directly petitions the court is the same irrespective of whether the individual seeks conditional release or final discharge. This approach is inconsistent with RCW 10.77.150(2) which clearly sets forth the standard for conditional release absent any requirement that the mental defect be cured.
The Court of Appeals asserted if Reid were correct, and an acquittee who directly petitions the court is entitled to final discharge if he no longer suffers from a mental disease or defect, there would never be a circumstance in which conditional release would be granted. "Rather, an inmate found mentally ill and dangerous would be denied any release, and an inmate found not mentally ill would be entitled to final discharge." Id. at 517.
We disagree. Conditional release is appropriate for an insanity acquittee who continues to be mentally ill but may not be unacceptably dangerous if certain conditions are imposed. Unlike RCW 10.77.200(3), RCW 10.77.150(2) which references conditional release does not inquire into mental status, only dangerousness. ("The issue to be determined at such a hearing is whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.150(2)).
In summary, a finding under RCW 10.77.200(3) that an insanity acquittee is dangerous as the result of a mental disease or defect does not preclude the court from granting a conditional release. Quite the contrary. Conditional release is a mechanism whereby mentally ill persons of varying degrees of dangerousness can be conditionally reintroduced into society where it is determined the conditions will reasonably mitigate the dangerousness.
Conversely, if the answer to the query posed in RCW 10.77.200(3) is that the individual is no longer dangerous as a result of mental disease or that he is no longer insanethen the acquittee must be unconditionally released.[4] But to reason, as did the Court of Appeals, a sane person may be held in a mental institution because he is dangerous reads the phrase "as a result of a mental disease or defect" out of the statute.
Division Two of the Court of Appeals correctly observed, "Legislation must be read to give effect to every word and not to render any language superfluous or absurd." Reid, 102 Wash.App. at 517, 7 P.3d 872 (citing City of Seattle v. Williams, 128 Wash.2d 341, 349, 908 P.2d 359 (1995); In re Personal Restraint of Robles, 63 Wash.App. 208, 216, 817 P.2d 419 (1991)). However in its effort to avoid reading the phrase "conditional release" out of RCW 10.77.200(3), it effectively read out the phrase "as a result of a mental disease or defect." This was error. All the words in the statute must be considered. When this statutory scheme is properly understood it is reasonable and internally consistent.
Here the trial court factually found Mr. Reid did not suffer from a mental disease or defect at the time of his discharge hearing. CP at 27. This factual determination vitiates the basis to confine Mr. Reid to a psychiatric facility pursuant to RCW 10.77.110. His continued detention, even if it is merely conditional, is therefore contrary to the plain language of the commitment statute which requires discharge after cure.
This conclusion is also consistent with the United States Supreme Court decision in *470 Foucha v. Louisiana. Recent Washington case law also supports Mr. Reid's position. In State v. Platt we opined, "Presumably, if [an] individual proves he or she is no longer mentally ill, such individual would be entitled to a final discharge." Platt, 143 Wash.2d at 252, 19 P.3d 412.

CONCLUSION
Under our statute when a defendant is found not guilty of a crime by reason of insanity, he may be committed to a mental institution if he is also found to present a substantial danger to others or a substantial likelihood of committing future criminal acts which would jeopardize public safety. He may be held there so long as he is both mentally ill and dangerous as a result of that mental illness, but no longer. When an insanity acquittee demonstrates he has regained his sanity, the basis for his confinement in a mental institution vanishes and he must be released. It was error for the trial court and the Court of Appeals to determine otherwise. The statute requires Mr. Reid's unconditional release from custody, and it is so ordered.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN AND OWENS, JJ., concur.
CHAMBERS, J. (dissenting).
I respectfully dissent. Society has a legitimate interest in protecting its citizens from those who commit violent acts. Because the past is an indicator of the future, society has a legitimate interest in ensuring that those who have committed violent acts do not do so again. Society may constitutionally detain those who have been found beyond a reasonable doubt to have committed acts which would be felonies except for the actor's insanity, provided the statutory scheme is narrowly tailored to meet the state's legitimate interest, the detention is not arbitrary, and the detainee is provided adequate constitutional protections. Thomas Reid was acquitted of homicide by reason of insanity and committed to Western State Hospital. Three years later, he petitioned for release. His treatment team believes, and the trial court found, he was a suitable candidate for conditional release, but not a suitable candidate for unconditional release. Washington State has a legitimate interest in integrating Reid back into society slowly on a conditional program. The statute and the constitution support the trial court and the Court of Appeals, and I would affirm.
The majority ably and correctly recites the facts. Reid killed his roommate, but was found not guilty by reason of insanity. He now petitions for final release. Dr. Brett Trowbridge testified Reid has a "fragile psyche," and could easily become delusional again. Report of Proceedings (RP) (July 20, 1998) at 25. The doctor characterized this fragility as a mental defect though he acknowledged "fragile psyche" is not a recognized disorder or defect within the annals of the science of psychology. RP at 25, 26, 29. Dr. Trowbridge recommended conditional release, fearing under the stress of life outside Western State Hospital, Reid could again succumb to psychosis. RP at 24, 34. Dr. Christian Harris similarly testified Reid suffered from a "fragility" to drugs, testifying that if Reid "uses hallucinogenic drugs or other drugs, he's putting himself in grave risk and the community in grave risk." RP at 16. We must decide whether the Legislature intended detainees like Reid be abruptly released into the community, or whether the Legislature intended the detainees have a gradual, supervised period of reintroduction.
The trial court found "Reid has not met his burden of proof demonstrating that he no longer presents, as a result of a mental disease or defect, a substantial danger to other persons or a substantial likelihood of committing felonious acts." Clerk's Papers (CP) at 27. The trial court also found Reid was not currently suffering a mental disease or defect, when it ruled: "Showing that he is not currently suffering a mental disease or defect is not sufficient alone to meet the statutory requirements based on a plain reading of the statute." CP at 27. The majority finds the trial judge fundamentally misunderstood the statute by not ordering final release, which is a regrettable error.

Chapter 10.77 RCW
Petitioners may seek release two different ways under our statutory scheme. They *471 may petition the secretary of Department of Social and Health Services for conditional release under RCW 10.77.150. If the secretary agrees that conditional release is appropriate, the petition will be forwarded to a trial court for a full adversarial hearing. If the secretary declines to recommend release, the trial court may still schedule a hearing. In that instance, the issue to be determined is "whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.150(2).
Alternately, a detainee may seek final or conditional release under RCW 10.77.200. Again, the detainee may apply to the secretary, and if the secretary agrees release is appropriate, the application will be forwarded to the court for a hearing. In that instance, the petitioner (the secretary or the detainee) must:
[S]how by a preponderance of the evidence that the petitioner no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.
RCW 10.77.200(2). However, RCW 10.77.200(3) explicitly lays out that a petitioner may petition the court directly. The issue to be determined is the same.
The trial court correctly read the statute. By its plain terms, final release is inappropriate unless the petitioner demonstrates either that he no longer presents "as a result of a mental disease or defect, a substantial danger to other persons" or that he no longer presents "a substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.200(2). While the trial judge found Reid was not currently suffering from a mental disease or defect, she clearly found he had failed to demonstrate he no longer presented a substantial likelihood of committing criminal acts jeopardizing public safety by the presence, albeit latent, of a mental disease or defect. That was sufficient to deny final release.
Further, reading the statute any other way creates a logical inconsistency. All a detainee needs to show to receive conditional release under RCW 10.77.150 is that, given the conditions of his release, he is no longer dangerous. However, under the majority's reading, to receive final release, all he needs to show is either that he is no longer dangerous or that he is not currently insane. It strains credulity to read the statute to mean it is easier to receive final release than conditional release.
While holding a person who is currently sane might run afoul of Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) standing alone, in the context of the entire statutory scheme, it is constitutionally acceptable, because Reid has the option of seeking conditional or final release at any time, and a very real chance of release once his situation improves. While the majority's reading of the statute is permissible under Foucha, Foucha does not require it. We therefore turn now to Foucha.

Foucha
Foucha was a challenge to the Louisiana civil commitment system. Louisiana allowed the continued detention, without regular court review, of criminal defendants acquitted by reason of insanity so long as they were still dangerous. Regaining sanity was never grounds for release. In Foucha, the United States Supreme Court found this violated due process. Foucha, 504 U.S. at 73, 112 S.Ct. 1780. The defendant had been acquitted, by reason of insanity, of burglary and illegal discharge of a firearm and committed to a psychiatric facility. Four years later the superintendent recommended conditional discharge because Foucha no longer manifested signs of mental illness.
Two doctors commissioned by the trial court concluded Foucha's mental illness was in remission, but neither of them could certify he was not a "menace" to himself or others. One of the doctors concluded Foucha had suffered from drug-induced psychosis at the time of the crime, but currently showed no symptoms. However, Foucha did suffer from "antisocial personality"  which is neither a mental disease nor treatable illness. *472 Foucha, 504 U.S. at 75, 112 S.Ct. 1780. Nonetheless, the trial court denied the petition for conditional release. The Louisiana Supreme Court affirmed placing the burden of proof on Foucha to prove he was not dangerous and found he had not met this burden.
In a sharply divided decision, the United States Supreme Court reversed, holding Foucha's continued detention based on dangerousness and antisocial personality disorder violated his right to due process. Foucha, 504 U.S. at 75-78, 112 S.Ct. 1780. The Court held that "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha, 504 U.S. at 79, 112 S.Ct. 1780 (citing Jones v. United States, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)). Detainees are "entitled to constitutionally adequate procedures to establish the grounds for his confinement." Foucha, 504 U.S. at 79, 112 S.Ct. 1780 (citing Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)). Further, the Court stressed the substantive component of the due process clause, which "bars certain arbitrary, wrongful government actions `regardless of the fairness of the procedures used to implement them.'" Foucha, 504 U.S. at 80, 112 S.Ct. 1780 (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha, 504 U.S. at 80, 112 S.Ct. 1780 (citing Youngberg v. Romeo, 457 U.S. 307, 316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).
Notwithstanding these overarching principles, not all detention schemes fail. The Court cited three examples of constitutional detention or commitment: (1) confinement of convicted criminals for purposes of retribution and punishment, (2) commitment of the mentally ill based on clear and convincing evidence of mental illness and dangerousness, and (3) pretrial detention based on a legitimate and compelling interest in preventing crime by the arrestee. Foucha, 504 U.S. at 80-81, 112 S.Ct. 1780.
Concurring, Justice O'Connor (who provided the vital fifth vote for the majority) stressed the Court's holding should not be read to mean an insanity acquittee who regained sanity should always automatically be released. "It might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if, unlike the situation in this case, the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness." Foucha, 504 U.S. at 87-88, 112 S.Ct. 1780 (O'Connor, J., concurring). Justice O'Connor counseled we stay close to the traditional due process analysis, warning "`courts should pay particular deference to reasonable legislative judgments' about the relationship between dangerous behavior and mental illness." Foucha, 504 U.S. at 87, 112 S.Ct. 1780 (quoting Jones v. United States, 463 U.S. 354, 365 n. 13, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)). This is precisely the current issue before this Court.
Reading the Justice White majority and Justice O'Connor's concurrence together to determine the holding, the United States Supreme Court has articulated three due process considerations for civil committed systems such as ours: (1) the need for a current determination of mental illness and dangerousness, (2) constitutionally adequate procedures to establish the grounds for confinement, and (3) compliance with the substantive component of the due process clause preventing arbitrary confinement. Foucha at 504 U.S. at 78-80, 112 S.Ct. 1780. A narrowly tailored scheme confining insanity acquittees after they have regained their sanity does not automatically run afoul of due process, but a blanket scheme will. Compare Foucha, 504 U.S. at 87-88, 112 S.Ct. 1780 (O'Connor, J., concurring) with Foucha, 504 U.S. at 78-80, 112 S.Ct. 1780.
Our system does not run afoul of the due process concerns articulated in Foucha. Insanity acquittees "shall have a current examination of his or her mental condition ... at least once every six months." RCW 10.77.140. Given the frequency of this review, the first concern articulated in Foucha does not apply here.
*473 Second, there must be constitutionally adequate procedures to establish the grounds for confinement. Under chapter 10.77 RCW, detainees are entitled to regular review and may petition the court for release. RCW 10.77.140, . 150, .220. The detainee is entitled to counsel, exams at state expense, and an adversarial hearing.
Chapter 10.77 RCW has recently been upheld in the face of a Foucha based challenge. We found insanity acquittees could constitutionally be made to bear the burden of establishing both sanity and lack of dangerousness. State v. Platt, 143 Wash.2d 242, 249-50, 19 P.3d 412 (2001). In reaching that conclusion, this Court noted:
"Those subject to criminal commitment have been found beyond a reasonable doubt to have committed an act which, except for their insanity, would have been a criminal act subjecting them to criminal penalties.... [P]ast conduct is heavily indicative of the likelihood that a person will commit similar acts which will again endanger others. Therefore, it is logical that those who have reached the attention of the State because of serious antisocial acts, would be subject to more procedural burdens in obtaining their release than are those whose acts are less threatening to the public safety."
Platt, 143 Wash.2d at 252, 19 P.3d 412 (quoting State v. Platt, 97 Wash.App. 494, 505, 984 P.2d 441 (1999)).
The Ninth Circuit Court of Appeals noted "[t]he state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society[, b]ecause `the insanity acquittal supports an inference of continuing mental illness.'" Hickey v. Morris, 722 F.2d 543, 548 (9 th Cir.1983) (quoting Jones, 463 U.S. at 366, 103 S.Ct. 3043), quoted with approval in Platt, 143 Wash.2d at 250, 19 P.3d 412.
This is in stark contrast with the statutory system invalidated in Foucha. The detention scheme at issue in Foucha allowed the indefinite confinement of a detainee until he or she could prove by preponderance of the evidence he or she was no longer dangerous. Foucha, 504 U.S. at 82, 112 S.Ct. 1780. The statute also failed to provide an adversarial hearing to prove, by clear and convincing evidence, the detainee was not dangerous. Foucha, 504 U.S. at 81, 112 S.Ct. 1780. Unlike other detention statutes upheld by the Court, the detention scheme adopted by Louisiana was not narrowly focused. The Washington State Legislature took care to incorporate significant procedural safeguards, therefore, protecting the interests of the criminally insane. The safeguards provided under RCW 10.77.150, the conditional release statute, and RCW 10.77.200, the final release statute, may be summarized as follows: (1) the detainee has a right to make application to the secretary, (2) the detainee has a right to directly petition the court, (3) the detainee has a right to an adversarial hearing, (4) if indigent, the detainee has a right to have an appointed, qualified expert or professional person examine him or her, upon the detainee's request, and (5) the detainee has a right to request a jury. These procedures were also provided under the former RCW 10.77.200, under which Reid petitioned. See former RCW 10.77.200 (1993).
As explained by Justice O'Connor in Foucha: "It might therefore be permissible... to confine an insanity acquittee who has regained sanity if ... the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness." Foucha, 504 U.S. at 87-88, 112 S.Ct. 1780 (O'Connor, J., concurring). In this instance, conditional release is narrowly tailored to protect the compelling and legitimate concern for public safety. At the time of Reid's commitment, he had been diagnosed by two doctors as suffering from major depression and psychosis triggered by his ingestion of illegal drugs and inability to successfully deal with personal stressors, both of which made him unable to tell right from wrong at the time of the shooting. All expert witnesses have agreed if Reid were to use drugs again, it is more likely than not he would suffer another psychotic episode. There was also evidence that Reid would suffer another psychotic episode should he not successfully deal with the personal issues that contributed to *474 his disorder. Because Reid has no history of successful independent living in the community, it is in the best interest of the community, as well as Reid, that he gradually work his way into the community, living eventually away from Western State Hospital and working independently.
Outlining the terms of Reid's conditional release in its order of conditional release, the trial court took care to tailor the nature and duration of Reid's conditional release, reflecting the pressing public safety concerns related to his continuing dangerousness. Amongst other conditions outlined in the trial court's order of conditional release, the order provides: (1) that Reid must reside at Western State Hospital, (2) that the community program staff determines the specific residence or ward within the Legal Offender Unit in which Reid is to reside, the length of stay, and the privileges granted, (3) that in the future, Reid may move into a community residence or community supervised facility, subject to the approval of the community program staff, and (4) that the community program staff is required to submit a report to the court every six months or if there is a substantial change in the treatment plan or Reid's condition. CP at 33-35. These terms bear a reasonable relationship to the purpose of Reid's confinement.
The United States Supreme Court identified a third problem with the Louisiana statute; that it violated substantive due process. Foucha, 504 U.S. at 80, 112 S.Ct. 1780. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha, 504 U.S. at 80, 112 S.Ct. 1780. Foucha speaks approvingly of narrowly tailored detention schemes serving legitimate state interests. Foucha, 504 U.S. at 80-82, 112 S.Ct. 1780. Louisiana's scheme "permit[ted] the indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others." Foucha, 504 U.S. at 83, 112 S.Ct. 1780 (emphasis added). Reid's confinement is not indefinite; he may petition for release at any time.
I therefore respectfully dissent. Conditional release, rather than final release, is clearly contemplated by the statute, and does not offend due process. The trial court and the Court of Appeals should be affirmed.
BRIDGE and IRELAND, JJ., concur.
NOTES
[1] Laws of 2000, ch. 94, § 16 substitutes "release" for "final discharge," and for purposes of this opinion we will use the term "final discharge."
[2] "Escapes" is actually something of a misnomer. The term suggests criminal punishment is warranted, but is nevertheless avoided. However if we truly accept the not-guilty-by-reason-of-insanity defense, we must also accept the inexorable conclusion that the defendant was wholly incapable of forming the requisite intent to commit a crime. The insanity acquittee does not escape punishment because he has committed no act deserving of punishment. See Foucha v. Louisiana, 504 U.S. 71, 76 n. 4, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("`[D]ifferent considerations underlie commitment of an insanity acquittee. As he was not convicted, he may not be punished.'" (quoting Jones v. United States, 463 U.S. 354, 369, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983))).
[3] Pet. for cert. filed (June 11, 2001) (No. 00-10642).
[4] This conclusion is also supported by United States Supreme Court cases interpreting the Federal Constitution. See O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) ("A finding of `mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement."); Foucha, 504 U.S. at 77, 112 S.Ct. 1780 ("`[T]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.'" (quoting Jones v. United States, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983))).