# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

    Respondent,

v.

GAIL YVETTE COLEMAN,

    Appellant.

No. 76851-4-I

PUBLISHED OPINION

FILED: December 10, 2018

FILED
2018 DEC 10 AH 8:39
COURT OF APPEALS DIV I
STATE OF WASHINGTON

VERELLEN, J. — An individual found not guilty of a crime by reason of insanity who is committed for treatment or supervision or who has been conditionally released from supervision may petition for final release[1] from custody.[2] We conclude an order granting or denying a petition for final release pursuant to RCW 10.77.200 is appealable as a matter of right under RAP 2.2(a)(13). Gail Coleman has the right to appeal the trial court's denial of her petition for final release.

If only immaterial portions of the findings of fact lack support, it is of no legal consequence. Because sufficient evidence supports the critical findings of fact,

---

[1] For clarity, we refer to "final release" rather than the statutory term "release" to avoid any confusion with the statutory provisions governing "conditional release." RCW 10.77.010(3), (20).

[2] RCW 10.77.200.

and those findings in turn support the key conclusions of law, the trial court correctly denied Coleman's petition for final release.

Therefore, we affirm.

## FACTS

In 2004, Coleman shot a grocery store manager in the face. The State charged her with second degree attempted murder. The court found her not guilty by reason of insanity in December 2005. After several years in treatment for paranoid schizophrenia at Western State Hospital, Coleman was conditionally released to the community in October 2009. Since then, she has lived in her own apartment and complied with the conditions of her release, all while under the supervision of Western State Hospital. She takes her medications regularly. Her paranoid schizophrenia is in remission when treated with medication. Coleman filed a petition for final release pursuant to RCW 10.77.200 in June 2016. Following a five-day evidentiary hearing in April 2017, the court denied her petition.

Coleman appeals.

## ANALYSIS

### I. Appealability of Denial of a Final Release Petition

The threshold issue is whether the denial of Coleman's petition is appealable as a matter of right.

RAP 2.2(a) lists superior court decisions appealable as a matter of right.[3] RAP 2.2(a)(13), on which Coleman relies, allows an appeal of "[a]ny final order made after judgment that affects a substantial right."[4] Appeal under this rule requires "a showing of (1) effect on a substantial right and (2) finality."[5] The parties do not dispute the first requirement, so the issue is finality. A final judgment or order "leaves 'nothing else to be done to arrive at the ultimate disposition of the petition.'"[6]

Final release, which used to be called "final discharge,"[7] is the "legal termination of the court-ordered commitment under the provisions of this chapter."[8] A patient may not be released "except by order of a court . . . made after a hearing and judgment of release."[9]

---

[3] RAP 2.2(b) and (c) also contain decisions appealable as a matter of right, but those sections are not germane.

[4] RAP 2.2(a)(13).

[5] State v. Howland, 180 Wn. App. 196, 201 n.3, 321 P.3d 303 (2014).

[6] State v. Gossage, 138 Wn. App. 298, 302, 156 P.3d 951 (2007) (quoting In re Det. of Petersen, 138 Wn.2d 70, 98, 980 P.2d 1204 (1999)); rev'd in part on other grounds, 165 Wn.2d 1, 195 P.3d 525 (2008); see also Petersen, 138 Wn.2d at 88 ("'A final judgment is a judgment that ends the litigation, leaving nothing for the court to do but execute the judgment.'" (quoting Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 79 Wn. App. 221, 225, 901 P.2d 1060 (1995))); In re Det. of Turay, 139 Wn.2d 379, 392, 986 P.2d 790 (1999) ("a 'final judgment' is one that settles all the issues in a case").

[7] State v. Reid, 144 Wn.2d 621, 624 n.1, 30 P.3d 465 (2001) (citing LAWS OF 2000, ch. 94, § 16).

[8] RCW 10.77.010(20).

[9] RCW 10.77.120(1).

RCW 10.77.200 governs final release procedures. A person "may petition the court at any time for [their final] release."[10] No section of RCW 10.77 mandates that either the Department of Social and Health Services or the person petition for final release. If a petitioner shows by a preponderance of the evidence that she "is no longer dangerous as a result of mental disease or that [s]he is no longer insane—then the [petitioner] *must* be unconditionally released."[11]

The State points to other sections in chapter 10.77 RCW that govern conditional release to argue against the finality of the court's decision. But final release and conditional release are drastically different.[12] A petition for final release carries the possibility of finality, whereas a petition for conditional release does not.[13] A person petitioning for conditional release remains under the court's jurisdiction regardless of the petition's disposition. A person on conditional release is subject to regular court monitoring, modification of her release conditions, and

---

[10] State v. Klein, 156 Wn.2d 102, 114, 124 P.3d 644 (2005); RCW 10.77.200(3), (5). The Department of Social and Health Services may also petition for release. RCW 10.77.200(2).

[11] Reid, 144 Wn.2d at 630; RCW 10.77.200(3), (5).

[12] See id. at 629-30 ("Unlike RCW 10.77.230(3), RCW 10.77.150(2) which references conditional release does not inquire into mental status, only dangerousness.").

[13] At oral argument, the State compared denial of a patient's petition for final release to a motion to dismiss and argued that they are both examples of motions whose appealability depends on the court's decision. But this comparison ignores the fundamental difference that the former is being appealed following a trial on its merits and the other is a threshold determination whether a trial is warranted.

limitations on her liberties.[14] But a successful petition for final release necessarily results in termination of any court jurisdiction over the person, leaving nothing else for the court to do.[15]

The State relies heavily on In re Detention of Petersen to argue against Coleman's right to appeal, but Petersen is inapposite because it addresses interlocutory circumstances akin to a petition for conditional release.[16] In Petersen, our Supreme Court considered whether denial of a probable cause hearing, a statutorily-required hearing prior to an unconditional release hearing, was appealable as a matter of right.[17] The court concluded the decision was not appealable under RAP 2.2(a)(13) because the finding of no probable cause "is not a final order after judgment in light of the court's continuing jurisdiction over the [patient] until their unconditional release."[18] Only discretionary review was available "[i]n light of the nature of the show cause hearing required by

---

[14] RCW 10.77.150(3)(d); RCW 10.77.160.

[15] RCW 10.77.010(20); compare RCW 10.77.190(2) (if certain persons "reasonably believe" that a patient is not adhering to the conditions of their release, then a court "shall schedule a hearing . . . to determine whether or not the person's conditional release should be modified or revoked") with RCW 10.77.200(3) (requiring that individuals petitioning for release show a lack of dangerousness and a substantial unlikelihood of criminality).

[16] 138 Wn.2d 70, 76-77, 980 P.2d 1204 (1999), rev'd in part on other grounds, 165 Wn.2d 1, 195 P.3d 525 (2008).

[17] Id. at 88 (citing RCW 71.09.090).

[18] Id.

RCW 71.09.090(2)."[19] But the court strongly suggested that a decision on the merits of unconditional release is appealable as a matter of right:

> [A]lthough we do not now so decide, review of decisions made after a full hearing on the merits under RCW 71.09.090(2) would be reviewable as of right. Such hearings appear to be equivalent to whole new trials with the same procedural protections as the initial commitment trial.[20]

Consistent with the Petersen court's suggestion, RCW 10.77.120(2) presumes the State's ability to appeal adverse rulings on petitions for final release:

> If the [S]tate *appeals* an order of [final] release, such appeal shall operate as a stay, and the person shall remain in custody and be returned to the institution or facility designated by the secretary until a final decision has been rendered in the cause.[21]

An order granting final release ends the court's jurisdiction over the patient, consistent with legislative contemplation of a release order as a final ruling.

The State also compares this case to In re Dependency of Chubb[22] and State v. Howland,[23] but neither is compelling. In Chubb, a parent appealed dependency review orders, not the dependency order or parental rights termination, and our Supreme Court concluded they were not appealable pursuant to RAP 2.2.[24] The dependency review orders were interlocutory because the

---

[19] Id. at 95.

[20] Id. at 87 n.13.

[21] RCW 10.77.120(2) (emphasis added).

[22] 112 Wn.2d 719, 773 P.2d 851 (1989).

[23] 180 Wn. App. 196, 321 P.3d 303 (2014).

[24] Chubb, 112 Wn.2d at 721, 724-25.

review hearings occurred automatically as part of an ongoing process.[25] Similarly, in Howland, a trial court's denial of a patient's petition for conditional release was not appealable under RAP 2.2(a)(13) because it was not a final order.[26] Even if the trial court had granted the patient's conditional release petition, it would have retained jurisdiction and disposed only of the petition itself.[27]

Here, Coleman appeals a decision based on a five-day evidentiary hearing on the merits of her petition. Coleman would not be under any court's jurisdiction if her petition were granted. And RCW 10.77.200 does not provide for routine monitoring of Coleman's readiness for release nor does it require a preliminary hearing before a full evidentiary hearing.[28] Moreover, the statute contemplates grant of a release petition as a final, appealable decision.[29]

Similarly, in State v. Gossage, this court concluded a trial court order denying a sex offender's petition for a certificate of discharge was appealable as a matter of right.[30] The court rejected as inapt the State's analogy to Petersen and Chubb.[31] The court upheld the offender's right to appeal because no court would have had continuing jurisdiction over the offender if his petition were

---

[25] Id. at 724.

[26] Howland, 180 Wn. App. at 201.

[27] Id. at 202.

[28] See RCW 10.77.200(3) ("The court, upon receipt of the petition for release, shall within forty-five days order a [release] hearing.").

[29] RCW 10.77.120(2).

[30] Gossage, 138 Wn. App. at 301-02.

[31] Id. at 302.

granted and because no statute required routine monitoring to determine whether termination of ongoing court jurisdiction was warranted.[32] The same analysis applies to a petition for final release of a person found not guilty by reason of insanity.

The State contended at oral argument that it may appeal the grant of a final release as a matter of right, implicitly conceding that a decision on a final release petition is a final judgment, but suggested that an unsuccessful petitioner could not appeal as a matter of right the denial of a final release. The State provides no authority for this one-sided approach. An order granting or denying the petition for final release leaves "'nothing else to be done to arrive at the ultimate disposition of the petition.'"[33] Coleman is appealing a final order.

Accordingly, we follow the reasoning in Gossage and conclude that the trial court's order dismissing a petition for final release is appealable as a matter of right pursuant to RAP 2.2(a)(13).[34]

## II. Substantial Evidence Supports the Court's Essential Findings of Fact

The main, narrow issue presented by Coleman on the merits is whether we should reverse the court's denial of her petition and remand for reconsideration if, as she contends, 7 of its 58 factual findings are unsupported by the record.[35]

---

[32] Id.

[33] Id. (quoting Petersen, 138 Wn.2d at 98).

[34] Because the court's order is appealable under RAP 2.2(a), we do not need to consider Coleman's alternative argument that discretionary review is warranted under RAP 2.3.

Our review is limited to determining whether substantial evidence supports the challenged findings of fact and, in turn, if the supported findings and unchallenged findings support the court's conclusions of law.[36] "Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding."[37] "So long as this substantial evidence standard is met, 'a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.'"[38] Even if a trial court relies on erroneous or unsupported findings of fact, immaterial findings that do not affect its conclusions of law are not prejudicial and do not warrant reversal.[39] Unchallenged findings of fact are verities on appeal.[40]

Coleman challenges findings of fact based on testimony given by three doctors who testified at her final release hearing.[41] Dr. Kevin Peterson is an

---

[35] Coleman also assigns error to finding of fact 58 but does not argue why it is error. We need not consider an issue that has not been argued by the appellant. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[36] Klein, 156 Wn.2d at 115; In re LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

[37] Klein, 156 Wn.2d at 115.

[38] Blackburn v. State, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)).

[39] State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992).

[40] Cowiche Canyon, 118 Wn.2d at 808.

[41] Several of the trial court's findings are a summary recitation of the testimony of particular witnesses. Findings of fact that merely purport to summarize testimony of a witness without an indication that the trial court found the testimony credible can be problematic. A finding that a particular witness

independent psychologist who testified on Coleman's behalf. Dr. Haley Gummelt is a psychologist at Western State Hospital who recently evaluated Coleman as part of her petition for final release. Dr. Daniel Ruiz-Parades is an administrator and psychiatrist at Western State Hospital who chairs the committee that makes recommendations regarding final release.

Coleman challenges a portion of finding of fact 18, that "Dr. Peterson found Ms. Coleman at a low risk to reoffend so long as she maintains her compliance with medication and the treatment/housing structure . . . in place." Dr. Peterson assessed Coleman as being a low clinical risk because "she is in treatment" and "connected with a good program."[42] But he noted it is generally very common for individuals experiencing paranoid schizophrenia to stop taking their medication. Dr. Peterson also testified that Coleman could voluntarily opt out of treatment services following release and, if she "stops medication, if she stops treatment, if she stops things that are keeping her oriented and stable, yes, of course, her risk

---

testified, "The stop light was red" is not the same as a finding of fact that the stop light was red. A finding of fact should be a determination rather than a mere recitation. See Leschi Imp. Council v. Washington State Highway Comm'n, 84 Wn.2d 271, 283, 525 P.2d 774 (1974) ("'A finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'") (quoting NLRB v. Marcus Trucking Co., 286 F.2d 583, 590 (2nd Cir. 1961)). Trial courts make findings of fact about ultimate facts which "'are the essential and determining facts upon which the conclusions rests and without which the judgment would lack support in an essential particular.'" In re Marriage of Lutz, 74 Wn. App. 356, 370-71, 873 P.2d 566 (1994) (quoting Wold v. Wold, 7 Wn. App. 872, 875, 503 P.2d 118 (1972)). If the trial court chooses to summarize the testimony of a witness, the best practice is to clearly articulate whether the court found that testimony credible.

[42] Report of Proceedings (RP) (Apr. 10, 2017) at 130.

goes up."[43] Because this testimony is sufficient to convince a reasonable person of the truth of the court's finding that Coleman is low risk so long as she takes her medication and continues with treatment and housing services, the finding is supported by substantial evidence.

Coleman objects to finding of fact 19 in its entirety:

> On cross-examination, Dr. Peterson testified that if Ms. Coleman loses the treatment/housing structure . . . and decompensates, she will become a substantial danger. He also testified that Ms. Coleman's chronic paranoid schizophrenia is currently in remission, but may become active[,] rendering Coleman a danger to others.[44]

This particular finding summarizes the testimony of Dr. Peterson. Dr. Peterson testified if Coleman becomes medication noncompliant and decompensates, then "I don't know if she becomes a substantial risk, but the risk increases. . . . She could, in fact, [become extremely dangerous] if somebody wants to be focused on that, yes. . . . If she becomes dangerous, she becomes a substantial risk, yes."[45] Viewed in conjunction with the evidence supporting finding of fact 18, substantial evidence supports finding of fact 19.

Coleman also challenges finding 20:

> Like Dr. Peterson, Dr. Gummelt also found Ms. Coleman to be a low risk to reoffend should [the treatment provider] continue case and medication management. Dr. Gummelt testified that should she lose this structure and decompensate, Ms. Coleman will become a substantial risk to public safety.[46]

---

[43] Id. at 140.

[44] Clerk's Papers (CP) at 105.

[45] RP (Apr. 10, 2017) at 133.

[46] CP at 105.

The first sentence is unsupported by the record, and the State concedes the second sentence is inaccurate. Dr. Gummelt did not testify that Coleman's low risk of reoffense was connected to case management. In fact, Dr. Gummelt's written evaluation of Coleman stated, "If [ongoing case and medication management] were to be discontinued or altered, her risk for future violence may or may not be affected."[47] Substantial evidence does not support finding of fact 20.

However, this error does not justify remand. Finding of fact 20 explicitly echoes findings of fact 18 and 19, which are supported by Dr. Peterson's testimony. Even without finding of fact 20, the court could have relied on findings of fact 18 and 19 to reach the same legal conclusion on the same evidentiary basis, albeit one provided by a different expert.[48] Accordingly, the error is immaterial.

Coleman disputes part of finding of fact 22, that "[b]oth Dr. Peterson and Dr. Gummelt were of the opinion that Ms. Coleman lacks personal support in the community, which is a risk factor of concern."[49] Although Coleman is correct that

---

[47] CP at 75.

[48] We do not give any more or less weight to the finding based on the testifying expert or their relationship to Coleman. See Klein, 156 Wn.2d at 121 ("We generally do not substitute our judgment with that of the trier of fact regarding issues of conflicting expert testimony.").

[49] CP at 105.

Dr. Gummelt did not share this opinion with Dr. Peterson,[50] this error is immaterial because substantial evidence supports the disputed part of the finding. Dr. Peterson described Coleman's "lack of personal supports" as "a weakness," and noted that Coleman has difficulty engaging with her family because they live far away.[51] In addition, his written evaluation states, "She has attended peer support groups . . . but doesn't socialize outside groups with other patients much."[52] Because this error is immaterial, no relief is warranted.

Coleman objects to finding of fact 25 in which the court again compares Dr. Peterson's and Dr. Gummelt's testimony:

> Dr. Peterson and Dr. Gummelt also expressed concern regarding Ms. Coleman's lack of employment. Both doctors expressed concern [about] whether Ms. Coleman would be able to obtain or maintain employment and simultaneously manage her psychotic symptoms.[53]

Dr. Gummelt evaluated Coleman and wrote, "[I]t is unclear whether she would be able to maintain employment and manage her psychiatric symptoms."[54] Dr. Peterson did not share this concern. As with finding of fact 22, this is an immaterial error because substantial evidence supported the finding as to one

---

[50] See CP at 72-73 (evaluating Coleman's relationships and concluding "Ms. Coleman has maintained consistent relationships with her family, despite the fact that they live on the other side of the country. She reported having developed friendships with other clients in her groups and with her neighbors.").

[51] RP (Apr. 10, 2017) at 128.

[52] CP at 62.

[53] CP at 105.

[54] CP at 73.

testifying expert, and that portion of the finding supports the court's conclusion.

The last two objections are to factual findings 54(d) and 54(f), which are based on the testimony of Dr. Ruiz-Parades.

The first finding is "Sooner or later, a person diagnosed with chronic [p]aranoid [s]chizophrenia would relapse."[55] Dr. Ruiz-Parades stated at least four times during his testimony that relapse is common for individuals experiencing paranoid schizophrenia. He stated directly, "It is part of the nature of [chronic paranoid schizophrenia] that almost [every patient] always [has] relapses sooner or later," and that "[t]here are concerns about well-being and safety [b]ecause the nature of the current risks for schizophrenia is one for relapses.[56] Substantial evidence supports this finding.

The second finding states, "The efficacy of medication would change over time and could cause an acute relapse of symptoms."[57] Dr. Ruiz-Parades testified about long-term medication efficacy:

> Another scenario is that the person may become refractory to the medication. And it happens that the Medication A has worked very well for a number of years [but] at some point in time is no longer effective. And so at [that] point in time, it may be necessary to adjust the medications.
>
> . . . .
>
> . . . [S]ometimes the medication after being taken for several years is no longer effective. The effectiveness of the medication is not guaranteed for life. The fact that Medication A works now [and]

---

[55] CP at 109.

[56] RP (Apr. 13, 2017) at 543, 552.

[57] CP at 109.

has been good for three years, four years, or five years—I have seen many cases in which the medication is[,] the patients decompensate, and we have to change the treatment weekly.[58]

This testimony lets a reasonable fact finder arrive at the same factual determination as the trial court. The finding is supported by substantial evidence.

The court concluded as a matter of law that Coleman "requires continued supervision by [Western State Hospital] and the court."[59] Accordingly, the court denied Coleman's petition. This conclusion was supported by six of the findings of fact discussed above and by the court's unchallenged findings, particularly findings of fact 56 and 57:

56. Ms. Coleman's chronic [p]aranoid [s]chizophrenia may, with reasonable medical probability, occasionally become active.

57. Given Ms. Coleman's history of mental instability and the violent nature of her index offense, when her chronic [p]aranoid [s]chizophrenia becomes active, it will render her a danger to others.[60]

These findings are verities on appeal.[61]

On Coleman's narrow appeal, the court's legal conclusions are supported by findings of fact either unchallenged on appeal or supported by substantial evidence. Accordingly, we decline to reverse and remand for further proceedings.

Coleman also challenges the court's ruling on the grounds that her trial counsel was ineffective in failing to object at trial to the seven findings of fact

---

[58] RP (Apr. 13, 2017) at 543-44.

[59] CP at 110.

[60] CP at 109.

[61] Cowiche Canyon, 118 Wn.2d at 808.

above. To prove she received ineffective assistance of counsel, Coleman must show both that her counsel's performance was deficient and that the deficiency prejudiced her.[62]

An appellant is not required to object at trial to findings of fact in order to preserve a challenge to the sufficiency of the evidence. "When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings."[63] The fact that Coleman's counsel did not object cannot constitute a deficient performance when her counsel had no reason to object.

Accordingly, we affirm.

WE CONCUR:

Andrus, J.

Leach, J.

---

[62] State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[63] CR 52(b); see CR 46 ("Formal exceptions to rulings or orders of the court are unnecessary."); Gamboa v. Clark, 180 Wn. App. 256, 266, 321 P.3d 1236 (2014) ("Under CR 46, formal exceptions to a trial court's findings are unnecessary."), aff'd, 183 Wn.2d 38, 348 P.3d 1214 (2015).