# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>J.P.<br><br>Appellant. | No. 58768-8-II<br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, A.C.J. — J.P. appeals the trial court's order extending his involuntary civil commitment for an additional 90 days based on the conclusion that he was gravely disabled. He also argues the court's findings of fact are not sufficiently written. Because the court's written findings of fact are sufficient for appellate review and substantial evidence supports the court's gravely disabled finding under RCW 71.05.020(25),[1] we affirm the court's involuntary commitment order.

## FACTS

### I.    BACKGROUND FACTS

In 2022, the trial court ordered J.P. to undergo a competency evaluation after the State charged J.P. with several crimes. A medical professional conducted the evaluation and concluded that J.P. could not "rationally assist" his defense counsel due to mental illness. Clerk's Papers (CP) at 70. The court dismissed the charges but ordered J.P. to be evaluated for possible civil

---

[1] The legislature amended this statute in 2023 after the involuntary commitment order was entered in this matter. LAWS OF 2023 ch. 433 § 3; ch. 425 § 20. Because these amendments did not change the text of this subsection, we cite to the current version of the statute.

commitment. On February 16, 2023, the court entered an order involuntarily committing J.P. for 14 days at Western State Hospital (WSH).

II.     PETITION FOR 90-DAY INVOLUNTARY TREATMENT

At the end of the 14-day commitment, WSH doctors petitioned to recommit J.P. for an additional 90 days on the basis of grave disability. On March 30, a bench trial was held on WSH's petition. Dr. Rosario Archer, Ph.D., testified on WSH's behalf and J.P. testified on his own behalf.

A.     Archer's Testimony at Trial

Archer testified that J.P. has been diagnosed with unspecified schizophrenia spectrum disorder, a behavioral health disorder. Archer testified that J.P. exhibited disorganized thinking, grandiosity of thoughts, delusions of identity, and fake or irrational thoughts with religious matters, all of which are symptoms of unspecified schizophrenia spectrum disorder. Archer provided several specific examples of these symptoms in her testimony, such as J.P. told her that he was "Little Jesus," J.P. told staff that he was "the Messiah," and J.P. reported to staff that there were little rats or animals in the ceiling of his room that disturbed his sleep. Rep. of Proc. (RP) (Mar. 30, 2023) at 10-11.

Archer testified that J.P. refused to take medication based on an irrational belief that medications were not good for his body and that he would only "take good water into his body." RP (Mar. 30, 2023) at 11. Archer also testified that J.P. had a history of behavioral health problems dating back to when he was 18 years old that included bizarre behaviors. J.P.'s family encouraged him to receive outpatient mental health services.

Archer also testified that records showed J.P. had contact with law enforcement when he was found in possession of his mother's vehicle and he smelled strongly of marijuana. Archer

2

believed J.P. was displaying a lack of volitional control, which is another symptom of schizophrenia.

Archer testified that J.P. has been placed in seclusions or restraints for assaultive behavior while at WSH. In one incident, where J.P. refused to return a fork to staff, he became belligerent, and security had to be called to handle the situation. In another incident, J.P. believed someone had attacked his parent's home and he became assaultive and belligerent. According to Archer, this incident was a result of J.P.'s behavioral health disorder causing him to lose control.

J.P. threatened multiple staff members. J.P. also threatened other patients. On one occasion, he tried to start a fight with a patient because the patient had recently been granted greater privileges than J.P.

Archer testified that J.P. appeared disheveled. Archer also testified that J.P. is not capable of making rational decisions regarding his treatment. Archer based her opinion on J.P.'s behavior at WSH, lack of insight, refusal to take medications, and being under the effect of strong schizophrenic symptoms. She also expressed her concerns that J.P. would resume homelessness and use substances in the community, which would only make his psychiatric symptoms more acute. Archer further opined, that if J.P. were released into the community there was a strong likelihood he would decompensate and repeat the same behaviors that caused him to be admitted to WSH.

Archer testified, "[J.P.] would be at high risk to repeat similar actions as have occurred in the past." RP (Mar. 30, 2023) at 42. When asked, if that would place J.P. at risk of being harmed or returned to WSH, Archer answered, "It is my clinical opinion that he would be." RP (Mar. 30, 2023) at 42.

Archer testified that if J.P. were released, he would not be able to independently care for his own basic health and safety needs in the community. Archer based her opinion on J.P.'s failure at WSH to demonstrate an ability to take care of his own basic health and safety needs. Archer also opined that J.P. would not take his medication if released. Archer testified that, in her clinical opinion, J.P. was not ready for release and it was in J.P.'s best interests that he remain at WSH.

B.      J.P.'s Testimony at Trial

J.P. testified that he refused to take his medications at WSH because the medication caused him to experience stomach problems and nasal congestion. J.P. told the trial court that he wanted to be released. J.P. stated that he had a room arranged at a dormitory at Central Washington University and he planned to begin classes immediately upon being released. He also testified that he needed to work on obtaining financial aid. He concluded by telling the court that he was ready to leave WSH and go to college.

C.      Trial Court's Decision

At the conclusion of the trial, the trial court entered an order granting the 90-day involuntary treatment petition on the basis of grave disability under both RCW 71.05.020(25)(a) and (b).[2] During its oral ruling, the court stated:

> I am finding that the State has proven their case by clear, cogent and convincing evidence. And I will authorize up to another 90 days of involuntary and inpatient treatment or—I'm sorry—of intensive inpatient treatment.
>     And I will find grave disability under both prongs given the testimony of Dr. Archer today and the symptoms that Mr.—that [J.P.] is experiencing.
>     I just want to encourage [J.P.] to continue to pursue his goals and do what he can there at [WSH] to be able to get where he's trying to go, as far as getting to Central Washington University. But at this point, we're just not quite there yet. Hopefully at the next hearing we will be there. But I am granting the Petition. . . . [a]nd I'm not finding [a less restrictive alternative] is in his best interest at this time.

---

[2] The caption of the order states that the involuntary commitment is for 180 days, but both WSH's petition and the body of the court's order state that it is for 90 days.

4

RP (Mar. 30, 2023) at 63-64.

The trial court entered written findings of fact and conclusions of law, specifically finding that J.P. was gravely disabled because "as a result of a behavioral health disorder [J.P.] is in danger of serious physical harm resulting from the failure to provide for [his] essential human needs of health or safety" and because J.P. "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, [J.P.] is not receiving such care as is essential for health and safety."  CP at 121-22.  The court also provided written "Facts in Support" of its findings of fact with a summary of Archer's and J.P.'s testimonies.  The court granted the 90-day involuntary commitment petition.

J.P. appeals the 90-day extension of his involuntary commitment.

ANALYSIS

I.      SUFFICIENCY OF FINDINGS OF FACT

As an initial matter, J.P. argues that the trial court's written findings of fact are insufficient for appellate review.  We disagree.

Findings of fact are required following an involuntary commitment hearing.  Mental Proceedings Rules (MPR) 3.4(b).  A trial court's written findings of fact "should at least be sufficient to indicate the factual bases for the ultimate conclusions."  *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986).  "The purpose of the requirement of findings and conclusions is to insure the judge 'has dealt fully and properly with all the issues in the case before . . . decid[ing] it'" and so, on appeal, we "'may be fully informed as to the bases of [the] decision when it is made.'"  *Id.* at 218-19 (internal quotation marks omitted) (quoting *State v. Agee*, 89 Wn.2d 416, 421, 573 P.2d 355 (1977)).  "Even if inadequate, written findings may be

supplemented by the [superior] court's oral decision or statements in the record." *LaBelle*, 107 Wn.2d at 219.

Here, the trial court appropriately checked the boxes on the standard order, setting forth the basis for its gravely disabled finding. The court included a lengthy recitation of the facts from the hearing, which information was in support of the necessary findings of fact it already entered.[3] Additionally, in its oral ruling, the court specifically stated that it found "grave disability under both prongs given the testimony of Dr. Archer today and the symptoms that Mr.—that [J.P.] is experiencing." RP (Mar. 30, 2023) at 63.

Compare *In re Detention of G.D.*, 11 Wn. App. 2d 67, 70, 450 P.3d 668 (2019), where Division One of this court held that the trial court's findings were insufficient to permit meaningful appellate review of an involuntary commitment order. There, the trial court only made check-the-box findings without additional findings. *Id.*

Here, the trial court checked the boxes indicating the basis of its gravely disabled findings, added the testimony from the hearing to its findings, and clearly stated in its oral ruling why it found J.P. to be gravely disabled. This is sufficient for our review.

II.    GRAVELY DISABLED

Next, J.P. argues that the evidence was insufficient to prove that he was gravely disabled. We disagree.

A.    Standard of Review

When reviewing a trial court's decision on involuntary commitment for sufficient evidence, we consider whether substantial evidence supports the court's findings of fact and

---

[3] Though we note the better practice is to make express findings of credibility when reciting testimony. *State v. Coleman*, 6 Wn. App. 2d 507, 516, n.40, 431 P.3d 514 (2018).

whether those findings of fact support the court's conclusions of law and judgment. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021). We "view the evidence in the light most favorable to the petitioner," and we do not disturb decisions "regarding witness credibility or the persuasiveness of the evidence." *Id*.

### B. Legal Principles

RCW 71.05.320(4) provides that after an initial involuntary commitment period, the professional person in charge of the facility in which a person is committed may file a new petition for involuntary treatment on various grounds. Relevant here, a new petition may be filed on the ground that the person continues to be gravely disabled. RCW 71.05.320(4)(d).

"Gravely disabled" is defined as

> a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25).

### C. RCW 71.05.020(25)(b).

The trial court found J.P. gravely disabled under both subsection (a) *and* (b). Only one criterion is necessary to show a person is gravely disabled. Focusing on subsection (b), this subsection enables the State to provide the kind of continuous care and treatment that can break "'revolving door' syndrome," a cycle in which patients repeatedly move from hospitalization to insecure situations, relapse, and then are rehospitalized. *LaBelle*, 107 Wn.2d at 206 (quoting Rhoden, *The Limits of Liberty: Deinstitutionalization, Homelessness, and Libertarian Theory*, 31 Emory L.J. 375, 391 (1982)).

When a petitioner seeks to prove that a person is gravely disabled under RCW 71.05.020(25)(b), they must show (1) "recent proof of significant loss of cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for [their] health or safety." *LaBelle*, 107 Wn.2d at 208. The second requirement may include a showing that "the individual is *unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id*.

Here, Archer testified that J.P. has a behavioral health disorder—unspecified schizophrenia spectrum disorder. Archer opined that J.P. displayed a lack of volitional control, which is a symptom of schizophrenia. Archer also testified that J.P. appeared disheveled and exhibited disorganized thinking, grandiosity of thoughts, delusions of identity, and fake or irrational thoughts with religious matters, all of which are symptoms of unspecified schizophrenia spectrum disorder.

Archer testified that if J.P. were released, he would not be able to independently care for his own basic health and safety needs in the community. She also testified that J.P. did not demonstrate an ability to take care of his own basic health and safety needs. Archer also opined that J.P. would not take his medication if released. J.P. confirmed that he did not like taking his medication.

Archer also testified that J.P. often got into altercations with others because of a loss of volitional control over his actions. Archer testified that, in her clinical opinion, J.P. was not ready for release and it was in J.P.'s best interests that he remain at WSH.

Viewing this evidence in a light most favorable to WSH, we conclude that substantial evidence supports the trial court's finding of fact that J.P. manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his

8

actions and is not receiving such care as is essential for his health or safety. This supports the court's ultimate finding that J.P. was gravely disabled.

## CONCLUSION

Because the court's written findings of fact are sufficient for appellate review and because substantial evidence supports the court's gravely disabled finding, we affirm the court's involuntary commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Maxa, J.

Glasgow, J.