# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>S.W. | No. 86990-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — S.W. appeals from the superior court's findings, conclusions, and order committing respondent for involuntary treatment. S.W. argues the order must be reversed because the superior court's findings are insufficiently specific to permit meaningful appellate review. We conclude the findings are adequate and affirm.

I

Exhibits admitted into evidence before the superior court are represented to have shown that, on the date of the incident giving rise to these proceedings, S.W. was ineligible to possess a firearm.[1] These exhibits reportedly included a conviction for assault with a domestic violence finding and domestic violence no-contact orders requiring surrender of firearms. S.W. agreed his ineligibility to possess a firearm was proved.

---

[1] The parties did not designate any exhibits for transmittal to this court under RAP 9.1(a)(3) and 9.6(c)(3).

A Seattle police officer testified to responding at approximately 12:30 p.m. on March 8, 2023, to a dispatch report of a male walking with a handgun and brandishing it at people.  Another responding officer testified that he observed S.W. disregarding officer commands, assisted in securing him, and observed a gun in his jacket pocket.  This officer removed the gun from S.W.'s pocket and placed it in his own.  Another officer took custody of the gun.  One of the testifying officers had handled "hundreds of semiautomatic pistols," had seen the same model firearm previously, and recognized the gun as "consistent" with that model.  Subsequent reports of the incident indicated there had been "problematic interactions between [S.W.] and a female" that "involved aggressive and unwanted sexual attention, which, when rebuked, was met with agitation and then physical aggression on [S.W.'s] part."  This "attracted the attention of others who observed that he had a weapon."

S.W. was charged with felony unlawful possession of a firearm in the second degree.  On April 16, 2024, the court entered an order in the criminal case ruling that S.W. had undergone competency restoration but was unlikely to retain competency in a reasonable period of time.  The court dismissed the criminal case without prejudice, and ordered S.W.'s commitment to a state hospital for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW.  On April 19, 2024, a physician and a psychologist at Western State Hospital presented the petition now at issue.  The petitioners sought additional involuntary treatment for S.W. relying on two statutory grounds.  They asserted that as a result of a behavioral health disorder, S.W. was "gravely disabled," see RCW 71.05.280(4), and that he had been determined to be incompetent and criminal charges had been dismissed pursuant to RCW 10.77.086(4), he had

committed acts constituting a felony, and as a result of a behavioral health disorder, he presented a substantial likelihood of repeating similar acts, see RCW 71.05.280(3).

Lauren Smith, Ph.D., licensed psychologist and one of the petitioners, testified that she completed an evaluation of S.W. regarding civil commitment. Dr. Smith gave S.W. diagnoses of unspecific schizophrenia spectrum and substance abuse disorder. At the time of her testimony on May 31, 2024, Smith said S.W. had significantly disorganized thought processes that were impacting his ability to communicate, displayed paranoid behaviors, and had been observed responding to internal stimuli she identified as hallucinations. S.W. had been "acting aggressive" and "exhibiting sexually inappropriate behaviors," was not attending to hygiene, had significantly impaired insight and judgment, and was not eating enough. Compared to an earlier time in the hospitalization he was less consistently accepting medication. S.W. was on one-to-one monitoring, primarily for his unpredictably aggressive and assaultive behavior towards others, and more recently for meal monitoring because he had started skipping meals and not getting adequate nutritional intake.

Dr. Smith opined that S.W. was not able to care for his basic needs in health and safety because he was not attending to personal hygiene and was not receiving adequate nutritional intake. She opined he would not be capable of providing for those needs in the community. Based on the similarity of his behavior in the hospital to his behavior leading to the criminal charges, and his lack of insight as to the wrongfulness of the behavior, Dr. Smith opined he was substantially likely to repeat similar conduct if discharged. Dr. Smith testified S.W. had displayed significant impairment with respect to

3

volitional and behavioral control, his needs could not be met in a less restrictive alternative, and hospitalization served the best interests of S.W. and others.

S.W. did not call any witnesses. In closing argument, S.W. argued the petitioners had not proved that the gun found on S.W.'s person was in fact a firearm. S.W. further argued that he had not yet required any medical response from not meeting essential needs.

In its oral ruling, the superior court found the police testimony adequately identified the gun as a weapon and as a result, "each and every element of the index offense has been proven by clear, cogent and convincing evidence." The court further found S.W.'s behavior, symptoms, and diagnosis made him substantially likely to commit similar acts in the future. Finally, the court found S.W. was gravely disabled. In support of this finding, the court relied on his sexualized behaviors, assault of peers, and one-on-one eating monitoring. The court found that with S.W. unable to meet his hygiene needs in a secure hospital setting, with his current status and symptomology he would not be able to do so in the community. The same day, the court entered its written findings, conclusions, and order committing respondent for involuntary treatment. The court found S.W. suffers from a behavioral health disorder, identified as unspecified schizophrenia spectrum and other psychotic disorder, and substance use disorder. The court found S.W. had been determined to be incompetent and felony charges were dismissed without prejudice by King County Superior Court, the incident in Seattle occurred substantially as described above, it constituted the felony of unlawful possession of a firearm in the second degree,

4

and as a result of a behavioral health disorder, S.W. presented a substantial likelihood of repeating similar acts.

From that point, the superior court's written order proceeded in a manner that S.W. asserts is objectionable.  In finding S.W. was "gravely disabled," the court checked a box on the form serving as template for the order, selecting language taken verbatim from the statutory definition.[2]  See RCW 71.05.020(25)(b).  Under the heading "Facts in Support," the superior court provided a lengthy narrative, much of which appears to take the form of a description of the testimony that was given at the hearing.  For instance, the court described some of Dr. Smith's testimony in the first person ("I completed an evaluation for mental illness.  I reviewed hospital records . . . ."), rather than as a determination by the trier of fact that these events occurred.  The order used the same approach to describe cross-examination, indicating, for instance, "He was admitted to [Western State Hospital] in December 2023.  I don't remember the exact date."  The narrative nevertheless accurately describes the testimony that was given at the hearing.

The court entered four additional findings "based on the petition and testimony of Petitioner."  Each of these findings was made by checking a box on the template without further explanation.  These check-the-box findings were that (1) less restrictive alternatives to involuntary detention were not in the best interest of S.W. or others, (2) S.W. presented/continued to present a likelihood of serious harm, (3) he presented/continued to present a substantial likelihood of repeating acts similar to the

---

[2] The superior court's finding that S.W. was "gravely disabled" relied on prong (b) of RCW 71.05.020(25).  Although the superior court referenced prong (a) in its oral ruling, the superior court did not make a written finding under prong (a).

charged criminal behavior, and (4) he was/continued to be gravely disabled. The court ordered inpatient treatment and remanded S.W. into state custody.

S.W. appeals.

II

S.W. argues that the superior court's findings are "not sufficiently specific to permit meaningful review," because they "consist of a preprinted standardized form reciting the statutory grounds for commitment." Beyond the check-the-box findings, S.W. argues that "mere recitation of testimony, without assessment of credibility or attempt to tie such testimony to the appropriate legal standard, is inadequate." While we share these concerns in some respects with the order under review, the superior court here indicated a sufficient basis for its ruling.

For civil commitment cases, CCR 3.4(b) states, "Unless the matter is tried to a jury, the court shall make and enter findings of facts and conclusions of law." In In re Detention of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986), the court reviewed four consolidated civil commitment cases, in each of which "the written findings consist[ed] of a preprinted standardized form reciting generally the statutory grounds for involuntary commitment and the requisite finding concerning the appropriateness of less restrictive treatment as an alternative to detention." The trial courts in those cases had crossed out inapplicable language, leaving the remaining template language as the findings of fact. Id. The Supreme Court held that this was inadequate. Id. In LaBelle, the Supreme Court exercised its discretion to supplement the written findings by the trial courts' oral decisions or statements on the record. Id. at 219. But as to "conclusory and general findings," the

court said, "such findings hereafter are not adequate." Id. at 220. After LaBelle, in all instances where involuntary commitment is ordered and the case is not tried by a jury, written findings should be entered indicating that the court considered the applicable statutory criteria. Id. The degree of particularity required depends on the circumstances of the case, but, "[a]t the very least, the findings should indicate the factual basis underlying the court's conclusion that a person is 'gravely disabled' and would not benefit from less restrictive treatment." Id. The findings must be "sufficiently specific to permit meaningful review," and should indicate the facts which support the conclusions. Id. at 218.

We applied LaBelle's requirement in In re Detention of G.D., 11 Wn. App. 2d 67, 70, 450 P.3d 668 (2019), in which the superior court had entered a civil commitment order relying on check-the-box findings. We explained that such findings did not permit meaningful appellate review because they did not "indicate the factual bases for the court's conclusion that G.D. presents a likelihood of serious harm to herself." Id. In keeping with LaBelle's caution that conclusory findings would be insufficient in civil commitment cases going forward, we did not attempt to find the requisite detail in the trial court's oral ruling. Id. We reversed on the ground that the trial court's "boilerplate findings of fact" were "insufficiently specific under LaBelle."[3] Id. at 72-73.

While LaBelle and G.D. establish that a civil commitment order cannot stand solely on conclusory, boilerplate, or check-the-box findings, the present case is distinguishable.

---

[3] Separately, we granted a motion to strike supplemental findings the superior court had subsequently entered in violation of RAP 7.2. G.D., 11 Wn. App. 2d at 72-73.

Separately from the later narrative portions of the order that S.W. challenges, the superior court entered case-specific, non-conclusory, and non-check-the-box findings that S.W. was determined to be incompetent and felony charges were dismissed without prejudice by King County Superior Court, S.W. committed the conduct observed on March 8, 2023, that conduct was a felony, and as a result of a behavioral health disorder S.W. presented a substantial likelihood of repeating similar acts. Although these findings to some degree echo the statutory language, they meet LaBelle's requirement that the court indicate the facts supporting its conclusions. These findings support civil commitment under RCW 71.05.280(3).

The present case is further distinguishable from LaBelle and G.D. in that those cases involved orders setting forth only boilerplate, check-the-box findings. In those cases, the trial courts had not provided the detailed narrative of the testimony presented to the court as the superior court did here. In In re Detention of A.F., 20 Wn. App. 2d 115, 122, 498 P.3d 1006 (2021), the trial court relied on findings echoing the statutory requirements for civil commitment and "included summaries of the testimony" given at the hearing. There, in applying LaBelle, we noted additionally that " '[f]indings may be sufficient even if they are implicit in the trial court's formal written findings of fact.' " Id. at 123 (quoting State v. Budd, 185 Wn.2d 566, 578, 374 P.3d 137 (2016)). We discerned in the trial court's summary of the testimony "implied findings by the trial court of credibility and reliability." Id. at 124.

The same is true here. At the hearing in this case, only the petitioners presented testimony, calling as witnesses three of the police officers involved in the March 8, 2023

8

response and Dr. Smith. In both summarizing the testimony and making findings that petitioners met their burden of proof, the superior court implicitly indicated its determination of credibility and reliability in the testimony it received. Dr. Smith gave testimony that S.W. had deteriorated in his ability to provide for his nutrition, to the point of needing one-to-one supervision for that purpose by the time of the hearing, in addition to his exhibiting paranoid behaviors, response to hallucinations, and inappropriate behavior. In context, the superior court made it clear that it credited these facts in finding S.W. gravely disabled under RCW 71.05.280(4) and 71.05.020(25)(b).

To be sure, as we have noted in other contexts, findings appearing simply to summarize testimony "can be problematic." State v. Coleman, 6 Wn. App. 2d 507, 516 n.40, 431 P.3d 514 (2018). This is because a finding merely that a witness testified to a fact, without more, is ambiguous as to whether the trial court has found the stated fact to be true. Id. "If the trial court chooses to summarize the testimony of a witness, the best practice is to clearly articulate whether the court found that testimony credible." Id. In Coleman, a person who had been found not guilty by reason of insanity and who had been conditionally released to the community appealed the trial court's denial of her petition for final release. Id. at 510. We made the above comment about findings summarizing testimony in reference to three doctors who had testified about Coleman's potential danger if released from state oversight. Id. at 517-18. The record was clear the doctors had testified to Coleman's posing some risk, and the trial court had credited their testimony. Id. Here, the superior court's summary of the testimony was not the clearest way to communicate to S.W. and to this court that it had accepted Dr. Smith's statements

as factual and that they supported its finding that S.W. was gravely disabled. Nevertheless, the context adequately indicates that this is so.

Other than challenging the sufficiency of the superior court's findings to support meaningful review, S.W. does not otherwise assert error. Having found the findings sufficient, we affirm.

_Birk, J._

WE CONCUR:

_Chung, J._